IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY MILLER, | § | |
| | § | |
| Defendant Below, | § | No. 277, 2024 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2401004214 (N) |
| | § | |
| Appellee. | § | |

Submitted: July 16, 2025
Decided: September 30, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS** Justices.

Upon appeal from the Superior Court. **AFFIRMED and REMANDED**.

Patrick J. Collins, Esquire, Collins Price & Warner Woloshin, Wilmington, Delaware for Appellant.

Andrew R. Fletcher, Esquire, Delaware Department of Justice, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

*INTRODUCTION*

The State obtained a reindictment for Anthony Miller ("Miller"). Count I of the original indictment charged Miller with Drug Dealing MDMA, a Class B felony.[1] The reindicted Count I charged Miller with Drug Dealing Methamphetamine, a Class C felony.[2]

During the plea colloquy, the trial court clerk noticed that the criminal action numbers were incorrect. Rather than re-examine exactly what charges Miller was pleading guilty to, the parties and the trial court simply corrected the criminal action numbers to correspond to the reindictment and assumed that nothing else had changed. As a result, the court correctly read the substance of the drug dealing charge, but it mistakenly referred to it as a Class B felony and misstated the sentence range for that charge.

Miller now asserts that his constitutional right to be indicted by a grand jury was violated because he pled guilty to an unindicted Class B felony with a 2–25-year sentence range rather than an indicted Class C felony with 0-15-year sentence range.[3] For the reasons stated below, we **AFFIRM** the judgment of conviction.

*I. FACTUAL AND PROCEDURAL BACKGROUND*

*A. Miller's Arrest*

During the first week of January 2024, a past, proven, reliable confidential informant ("CI") reported seeing "Thugsy" carrying a black handgun in his waistband in

---

[1] App. to Opening Br. at A32. MDMA stands for methylenedioxymethamphetamine.

[2] *Id.* at A36.

[3] Miller concedes that the other two counts to which he pled guilty were "indicted and correctly identified." Opening Br. at 13.

center city Wilmington. According to the CI, Thugsy sold crack cocaine and heroin in the area of West 5th and North Monroe Streets.[4] Detective Coffiey knew Thugsy to be Anthony Miller. The CI confirmed the identification from a photo.[5]

On January 10, 2024, members of the Wilmington Police Department's Drug/Organized Crime Vice Unit surveilled West 5th and North Monroe Streets in an attempt to locate Miller. They watched as Miller exited a liquor store. Miller drank from a beer bottle, then put it on top of a trash can and resumed walking. Officers approached and told him to put his hands in the air. They then told him to put his cellphone on the car and put his hands behind his back.[6]

Miller fled. Detective Rosaio grabbed Miller as he continued resisting and fighting. Rosaio observed a handgun in Miller's waistband. Rosaio grabbed the firearm out of Miller's waistband and attempted to handcuff Miller while holding the firearm during the scuffle. Miller ignored several commands and was eventually subdued with the assistance of a K9 officer who released his dog.

The firearm retrieved from Miller was a black Stoeger STR–9 9mm semi-automatic handgun loaded with 15 9mm rounds in the magazine and one in the chamber. A search

---

[4] App. to Opening Br. at A11. Because Miller pleaded guilty, the facts regarding the crime are drawn from the police report that was included in Miller's Appendix filed with his opening brief. A11-13.

[5] *Id*. The police report notes that Detective Coffiey "conducted a [DELJIS] inquiry on Miller which proved that he is an 8-time convicted felon under [listing DUC Numbers] relating to Drug, Firearm, tampering, robbery and assault charges which prohibit him from possessing a firearm and/or ammunition." A11.

[6] *Id.* at A12.

incident to arrest yielded a pill bottle (in Miller's jacket pocket) containing 39 multi-colored E pills that field tested positive for MDMA, a clear plastic bag containing 41 multi-colored E pills (in his left pants pocket), and 10 bags (found in his front right coin pocket) each containing approximately .2 grams of an off-white chunky substance that field tested positive for cocaine.[7]

After being read his Miranda rights at the police station and agreeing to speak with Detective Coffiey, Miller admitted to selling MDMA pills daily and stated that he was holding the crack cocaine for someone else.[8] Miller also stated that he fled because he had a handgun in his possession.

A New Castle County grand jury indicted Miller for Drug Dealing MDMA (Tier III, a Class B felony in violation of 16 *Del. C.* § 4752(a)(1)); Drug Possession MDMA; Possession of a Firearm During the Commission of a Felony ("PFDCF"); Carrying a Concealed Deadly Weapon ("CCDW"); Possession of a Firearm by a Person Prohibited ("PFBPP"); Possession of Ammunition by a Person Prohibited ("PABPP"); Resisting Arrest; Possession of a Controlled Substance (Cocaine); and Illegal Consumption of Alcohol on the Street.

On April 22, 2024, a New Castle County grand jury reindicted Miller. Regarding the substance of the charges, the only changes from the original indictment were that Count I was changed to Drug Dealing Methamphetamine Tier II, a Class C felony, and Count II

---

[7] *Id.* at A12 (police report).

[8] *Id.* at A13 (police report).

was changed to Tier II Possession Methamphetamine, a Class E felony.[9]  The reindictment reflected that Miller was in possession of 10 grams or more of methamphetamine with the intent to deliver, rather than MDMA as the State originally thought.

### B.  Miller's Motion to Suppress

On June 18, 2024, trial counsel filed a Motion to file a Motion to Suppress Out of Time.  The Superior Court granted that motion the same day, and  trial counsel immediately filed the Motion to Suppress.  Miller contended that the confidential informant's tip was stale, and that there was no reason to believe he was armed when he was seized.

### C.  Miller Pleads Guilty

On June 24, 2024, before the motion could be litigated, Miller entered into a plea agreement.[10]  He agreed to plead guilty to Drug Dealing Methamphetamine, PFDCF, and Resisting Arrest.[11]  In exchange, the State agreed to *nolle prosequi* the remaining charges, to not file a habitual offender petition, and to jointly recommend seven years of incarceration, which the parties believed was the minimum mandatory sentence.

---

[9]  *Id*. at A36-39.  More specifically, Count I in the original indictment charged that Miller "did knowingly possess with intent to deliver 62.5 or more doses, or 12.5 or more grams of 3, 4 – methylenedioxymethamphetamine (MDMA), or any mixture containing any such controlled substance as described in Title 16, Section 4714(d)(21) of the Delaware Code." *Id*. at A32.

Count I of the reindictment charged that Miller "did knowingly possess with intent to deliver 10 grams or more of methamphetamine a controlled substance described in Title 16, Section 4716(d)(3) of the Delaware Code, or any mixture containing such controlled substance." *Id*. at A36.

[10]  *Id.* at A53–86.  (Guilty Plea and Sentencing Transcript dated June 24, 2024).

[11]  *Id*. at A56-86.  The disposition for the remaining charges was entered *Nolle Prosequi* as part of his plea agreement.

The hearing began as a plea rejection colloquy. Miller signed plea paperwork before the plea colloquy. On the plea form, Count I, Drug Dealing MDMA, was incorrectly identified as a Tier III Class B felony.[12] Miller's attorney carried the error through to the Truth-in-Sentencing Guilty Plea Form. The offense is listed as Drug Dealing MDMA (Class B felony) on the form, with a 2–25-year sentence range.[13]

Count I of the reindictment charged Miller with Drug Dealing Methamphetamine Tier 2 in violation of 11 *Del. C.* § 4753(a)(1). That is a Class C felony. The criminal action number of that count was 24-04-1533.[14] At the plea hearing on June 24, 2024, the prosecutor mistakenly informed the judge that the plea in Count I was "drug dealing MDMA in a Tier 3 quantity, which is a Class B felony."[15]

The prosecutor stated that the original plea contemplated a ten-year sentence. But, after reviewing the suppression motion, the prosecutor decided to offer a new plea recommending seven years.[16] For Level V time, the State stated that the parties had agreed to jointly recommend the two-year minimum mandatory sentence in the drug dealing charge and the five-year minimum mandatory sentence for the firearm charge.[17] This, the prosecutor said, was a one-time deal being offer that day only. The prosecutor then stated

---

[12] *Id.* at A136.

[13] *Id.* at A138.

[14] *Id.* at A36. The docket reflects that on April 22, 2024, the State entered *nolle prosequi* as to the counts in the original indictment. *Id*. at A1.

[15] *Id.* at A61.

[16] *Id.* at A54–55.

[17] *Id*. at A62-63. Miller had prior charges which raised the minimum mandatory sentence to five years for his PFDCF charge. *Id*. at A70-71.

that the sentence range for Miller's case was 19-108 years, but that since Miller was habitual-eligible, the enhanced sentence would be "48 years up to three life sentences."[18]

The trial judge then conducted a colloquy with Miller. The Superior Court explained to Miller that he would be waiving his right to have his suppression motion heard. Miller indicated that he understood that he would be waiving that right by pleading guilty.[19] The trial judge stated that the Drug Dealing Methamphetamine count was a Class B felony, as was the PFDCF charge.[20] Miller admitted that he had prior felonies that would raise his minimum mandatory sentence for PFDCF to five years.[21] Upon being asked whether it was his "individual decision to reject the plea offer and move forward with trial[,]"[22] Miller asked whether it would be immediate sentencing. The trial judge confirmed that, based on the plea offer, it would be immediate sentencing. Miller then stated that he would accept the plea.

When Miller decided to take the plea, the trial judge told him that Count I was a Class B felony.[23] The court read the charges to which Miller was pleading guilty and Miller acknowledged his guilt as follows:

---

[18] *Id*. at A55. Reading from the plea form, the prosecution stated that the criminal action number was 24-01-0913. *Id*. at A62. The plea form did list Count I as having criminal action number 24-01-0913, but this was a mistake. The form also mistakenly states "Drug Dealing MDMA – Tier 3 (Class B felony)." *Id*. at A136.

[19] *Id*. at A74–75.

[20] *Id.* at A58.

[21] *Id*. at A70–71.

[22] *Id.* at A60.

[23] *Id.* at A67.

THE COURT: Now, the charges to which you are pleading guilty I'm going to read to you now.

Count I is a felony. In fact, it's a Class B felony, the charge of drug dealing. It says that on or about the 10th day of January 2024, in this County and State, you did knowingly possess with intent to deliver 10 grams or more of methamphetamine, which is a controlled substance, or any mixture that contained that controlled substance. Do you understand that charge, sir?

[THE DEFENDANT:] Yes.

THE COURT: Mr. Miller, how do you plead to that charge?

[THE DEFENDANT:] Guilty.[24]

Thus, the court correctly read the language in Count I of the reindictment (which charged Miller with drug dealing 10 or more grams of methamphetamine), but it incorrectly stated that this charge was a Class B felony. The trial court told Miller the sentencing range was 2-25 years (the sentencing range for a Class B felony), instead of the correct range of zero to 15 years (the sentencing range for a Class C felony).[25] The court stated that "under this plea, the minimum sentence that the Court could impose is seven years, the maximum is 52."[26] The court confirmed that Miller was agreeing to the plea because he believed that the plea was in his best interests. The court found the plea "to be made knowingly, intelligently and voluntarily, with a full understanding of the nature of the charges and the consequences of the plea."[27] The court stated that it would "enter an adjudication of guilt

---

[24] *Id*. at A67.

[25] *Id.* at A69. Miller then pleaded guilty to Count III (PFDCF) and to Count VII (Resisting Arrest).

[26] *Id*. at A71.

[27] *Id*. at A75.

as to drug dealing in methamphetamine, possession of a firearm during the commission of a felony, and resisting arrest."[28]

The clerk then interrupted the proceeding to state that the criminal action numbers were incorrect due to the reindictment.[29] The prosecutor then corrected the criminal action numbers, but neither lawyer realized that the reindictment had changed Count I from a Class B felony to a Class C felony.[30] The trial judge stated that the new amended action number for Count I was 24-04-1533 and that "[n]othing else has changed . . . it's just the numbers."[31]

### D. The Trial Court Accepts Miller's Plea and Sentences Him

The trial court accepted Miller's guilty plea and proceeded to immediate sentencing. As to the charge of Possession of a Firearm During the Commission of a Felony, the trial court sentenced Miller to 23 years at supervision Level 5, suspended after 5 years for 18 years at supervision Level 4 (DOC Discretion), suspended after 6 months for 18 months at supervision Level 3.[32] As to the charge of Drug Dealing, the trial court sentenced Miller to 2 years at supervision Level 5 with no probation to follow. As to the charge of Resisting Arrest, the trial court sentenced Miller to 2 years at supervision Level 5, suspended for 1

---

[28] *Id.*

[29] *Id.* at A77 ("[CLERK]: I believe he's been reindicted so they all have different Criminal Action Numbers now.").

[30] *Id.* at A77–78.

[31] *Id.* at A77–78. Count III (PFDCF) was 24-04-1535 and Count VII (Resisting Arrest) was 24-04-1539. *Id.* at A136.

[32] *Id.* at A82-83.

year at supervision Level 3.[33]  Thus, Miller was sentenced to a total of seven years of unsuspended prison time – two years for the drug dealing charge and five years for the PFDCF charge.

*E.  Direct Appeal*

On July 29, 2024, Miller filed a notice of appeal.  While his appeal was pending, Miller filed a motion for reduction of sentence pursuant to Superior Court Criminal Rule 35(b).  On August 19, 2024, the Superior Court stayed and deferred ruling on Miller's motion for reduction of sentence pending a decision on appeal.

Trial counsel continued to represent Miller on appeal.  He filed a Motion to Withdraw and Non-Merit Brief on November 21, 2024.  Miller filed points in response to the Motion to Withdraw.  The essence of Miller's argument was that his due process and equal protection rights were violated when his trial counsel allegedly failed to notify him of the motion to suppress that he had filed before Miller pleaded guilty.  Miller also stated in his brief that he did "not seek to reverse the conviction, nor withdraw the plea."[34] Instead, he sought reduction of his sentence to "time served" and an evidentiary hearing on the motion to suppress.

---

[33]  The Superior Court noted in its sentence order that "[t]he first 7 years of unsuspended Level V are composed of minimum mandatory terms that must be imposed and cannot be suspended for the felony drug possession and PFDCF.  *See* 16 *Del. C.* secs. 4753(a)(i), and 11 *Del. C.* sec. 1447A."

[34]  App. to Opening Br. at A115.

On January 14, 2025, this Court granted trial counsel's motion to withdraw, denied the State's Motion to Affirm, and appointed new appellate counsel to represent Miller. Briefing then proceeded in this Court.

## II. CONTENTIONS ON APPEAL

Miller contends on appeal that he "has a right under the federal and Delaware constitutions to have his charges approved by a grand jury[,]" and that his constitutional rights were violated when he pleaded guilty to an unindicted charge.[35] Miller argues that the consequence of this alleged violation was that he pleaded guilty to a higher degree felony which increased the minimum and maximum sentences. As a remedy, he asks that this Court vacate his convictions and sentence and remand the case to the Superior Court.

The State responds that vacating Miller's convictions is not warranted under plain error review. The mistake regarding the difference in the range of sentences between the Class B and Class C drug dealing charge was not clearly prejudicial to Miller's substantial rights so as to jeopardize the fairness and integrity of the trial process. Nor did it, according to the State, constitute manifest injustice. The State argues that Miller is bound by the representations he made in his voluntary plea and, accordingly, he has waived any claim based on the errors in the entry of the plea. The State emphasizes that Miller has never sought to withdraw his guilty plea.

The State presents three reasons as to why Miller's contentions that his guilty plea convictions should be vacated are without merit.

---

[35] Opening Br. at 5.

11

*First*, the State argues that the transcript of the plea colloquy does not support the claim that Miller pled to an unindicted charge. This is because the trial court correctly read to Miller the language in the reindictment, stating that Count I was knowingly possessing with intent to deliver 10 grams or more of methamphetamine, and that Miller indicated that he understood the charge and was pleading guilty to that charge.

*Second*, the State argues that Miller's sentence was not illegal because it was within the statutory range for a Class C felony.

*Third*, the State argues that the relevant case law suggests that Miller's plea should stand despite the error. Citing *Downer v. State*,[36] *Allen v. State*,[37] and *Wells v. State*,[38] the State argues that Miller received significant benefits from the plea, and he has not shown that he would have refused the plea had he been informed that the drug dealing offense was a Class C felony.

Alternatively, the State argues that this Court should remand to the Superior Court for resentencing Miller on his drug dealing conviction within the permissible sentencing range for a Class C felony of zero to 15 years. The State cites *Smith v. State*[39] where this Court remanded for resentencing, where the Superior Court sentenced a defendant to the statutory maximum 25 years, and where the guilty plea form erroneously stated that the maximum statutory sentence was 20 years.

---

[36] 543 A.2d 309 (Del. 1988).

[37] 509 A.2d 87 (Del. 1986).

[38] 396 A.2d 161 (Del. 1978).

[39] 89 A.3d 478, 2014 WL 1017277 (Del. Mar. 13, 2014) (TABLE).

Miller replies that, given the "plea paperwork and colloquy establish the fundamental error in the process[]," the State is incorrect in arguing that Miller is bound by his representations in the plea.[40] Miller further argues that the State's claim that Miller did not plead to an unindicted charge is "*largely*" unsupported by the record.[41]

Miller seeks to distinguish *Downer* arguing that: (i) Downer received a benefit from the State's charging error whereas Miller "pled to a more serious charge with a higher minimum mandatory sentence[;]"[42] and that (ii) the State would have been prejudiced by Downer's late challenge to the plea given the nature of the offenses and the youth of the victim.

Miller also distinguishes this case from *Allen* on the grounds that Miller pled to an unindicted charge, the charge had a higher minimum and maximum statutory sentence, and this case is on direct appeal.

Finally, Miller argues that remanding for resentencing will not cure the prejudice. According to Miller, taking the plea for the unindicted offense prevented trial counsel "from negotiating with the prosecutor for a lesser sentence on the properly indicted Class C felony," as well as for arguing for less time on that charge at the sentencing hearing.[43]

---

[40] Reply Br. at 3–4.

[41] *Id.* at 5 (emphasis added). Miller acknowledges that, "[i]t is true that the judge read the right substance (methamphetamine) and the right amount (10 grams or more) during the plea colloquy." *Id.* at 4-5.

[42] *Id.* at 6.

[43] *Id.* at 8–9.

## III. STANDARD OF REVIEW

Our Court reviews claims for constitutional error *de novo*.[44] If not raised below, constitutional claims are ordinarily reviewed for plain error.[45] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[46]

The parties do not dispute that Miller failed to raise the issue below. Accordingly, we review Miller's claim for plain error.

## IV. ANALYSIS

Miller asserts that he pled guilty to an unindicted charge which violated his right to be indicted by a grand jury.[47] He requests that his convictions be vacated and his case be remanded to the Superior Court. The State points out that Miller has never sought to withdraw his plea, that his plea was voluntary and that the transcript of the plea colloquy

---

[44] *Thomas v. State*, 293 A.3d 139, 141–42 (Del. 2003).

[45] *Id*. However, a deprivation of fundamental constitutional rights, such as the right to testify in a criminal case in one's defense, can be considered a structural error that triggers *de novo* review on appeal. *Id*.

[46] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (internal citation omitted).

[47] Del. Const. Art. 1, § 8. In 1884, the United States Supreme Court held that the Fifth Amendment's grand jury right in the United States Constitution did not apply in state court criminal proceedings. *See Hurtado v. California*, 110 U.S. 516, 538 (1884). This is one of "[o]nly a handful of Bill of Rights protections [that] remain unincorporated." *McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010); *id*. at 765, n.13.

14

does not support his claim. It argues that the Superior Court correctly read the language of the reindictment to Miller stating that Count I was knowingly possessing with intent to deliver 10 grams or more of methamphetamine. According to the State, that the trial court misstated the felony class and sentence range, which was longer than the class sentence range for the reindicted charge, does not undermine his voluntary admissions. Nor was his sentence illegal, as the sentence he received for his drug dealing charge was within the statutory range for a Class C felony. We address these contentions next in the context of the relevant authorities.

*A. Relevant Case Law*

In *Allen v. State*, the defendant was subject to a mandatory minimum sentence of three years and a maximum of fifteen years, but the trial judge and the defendant's attorney erroneously informed the defendant that his sentencing range was three to thirty years.[48] The defendant pled guilty and the court sentenced him to ten years, suspended for probation after three years.[49]

The defendant sought to withdraw his plea two years later and this Court affirmed the Superior Court's denial of relief finding "that the defendant was not prejudiced by the error in the plea colloquy and that therefore he has failed to demonstrate that he suffered manifest injustice."[50] This Court distinguished *Allen* from *Wells v. State*[51] where our Court

---

[48] *Allen v. State*, 509 A.2d 87 (Del. 1986).

[49] *Id.*

[50] *Id.* at 88.

[51] 396 A.2d 161 (Del. 1978) (reversing because the trial court failed to inform the defendant what the maximum potential sentence would be).

reversed the trial court after it "had failed to explain to the defendants the possible maximum sentences they could receive."[52]  This Court explained that:

> [*Allen*] is distinct in that the trial court's error was merely technical; the trial judge did inform the defendant as to the maximum sentence he could receive, but mistakenly told the defendant to expect the possibility of a sentence greater than the law actually allowed.  This case does not involve a misstatement which may lead a defendant into believing that the penalty is less than the law provides, thus causing the defendant to plead guilty when he might not have otherwise done so.[53]

This Court expressed its skepticism that the error had influenced the defendant's decision to plead guilty.[54]  We observed that the trial court "impliedly found that the disparity in the maximum penalty to which the defendant was subject would have had little effect on his decision to plead guilty,[]"[55] and we quoted the Fifth Circuit Court of Appeals for the proposition that "'[t]he probability such information [that the possible sentence was less] would have influenced [the defendant] not to change his plea so far outweighs the possibility that the prospect of stiffer punishment may have caused the change, that we refuse to consider the latter as relevant.'"[56]

Two years later, in *Downer v. State*, this Court addressed a situation where the defendant was sentenced to seven years imprisonment after pleading guilty to a sexual

---

[52]  *Allen*, 509 A.2d at 88.

[53]  *Id.* at 88–89.

[54]  *Id.* at 89.

[55]  *Id.*

[56]  *Id.* (quoting *United States v. Woodall*, 438 F.2d 1317, 1329 (5th Cir. 1970), *cert. denied*, 403 U.S. 933 (1971)).

misconduct charge.[57] Fifteen months after his sentencing, he filed a motion to vacate his guilty plea following this Court's determination in an unrelated case. In that unrelated case, we impliedly repealed, prior to the entry of his plea, the sexual misconduct statute that had formed the basis for his plea.

We held that the defendant, through a voluntary and intelligent plea bargain, had forfeited the right to attack the underlying infirmity in the charge to which he had pleaded guilty.[58] We found significant support for this holding in cases from other jurisdictions "which have considered the effect of a plea of guilty to a 'nonexistent' offense."[59] We stated that "[a]gain, the rationale used to sustain a guilty plea to the nonexistent offense is that since the defendant had 'used the plea as a tool for avoiding a more serious conviction . . . it would be the height of sophistry to vacate the defendant's plea of guilty.'"[60] Additionally, we noted that the State had "detrimentally relied upon the finality of defendant's voluntary plea of guilty to a lesser charge[]" further observing that "[t]he problems inherent in the prosecution of sexual crimes involving young children are well established."[61]

More recently, in *Hernandez-Martinez v. State*, we reversed the trial court's denial of relief where multiple mistakes were made in the defendant's plea hearing and where the

---

[57] *Downer v. State*, 543 A.2d 309, 310 (Del. 1988).

[58] *Id.* at 312.

[59] *Id*.

[60] *Id.* at 313 (quoting *People v. Bernard*, 656 P.2d 695, 697 (Colo. 1983)).

[61] *Id.*

defendant sought to withdraw his plea before sentencing.[62]  We distinguished two cases

cited by the State – *Smith v. State*[63] and *Shorts v. State*[64] – on the grounds that the maximum

sentence error in those cases "was corrected when the court resentenced the defendant on

remand consistent with the erroneous maximum sentence by the court (Smith) or when the

State withdrew its petition to declare the defendant an habitual offender (Shorts)."[65]

Although the court intended to sentence Hernandez-Martinez to 3.5 years or fewer, it

sentenced him to four years at Level V.  We observed that "[u]nder Rule 11, 'the court must

confirm that the defendant understands the consequences of his guilty plea and must state

the minimum and maximum sentences on the record.'"[66]  Further, "[t]he requirement exists

because '[t]he maximum possible sentence is the most important consequence of a guilty

plea.'"[67]

We further distinguished *Hernandez-Martinez* from *Smith* on several other grounds.

We observed that Smith filed his motion months after sentencing making him subject to

---

[62] *Hernandez-Martinez v. State*, 308 A.3d 1192, 2023 WL 8254350 (Del. Nov. 29, 2023) (TABLE).

[63]  89 A.3d 478, 2014 WL 1017277, at *3 (Del. March 13, 2014) (TABLE).  ("The original sentencing judge sentenced Smith to the statutory maximum of twenty-five years.  On remand, however, the sentencing judge reduced this sentence to twenty years to comport with the misstatement on Smith's plea form.  The second sentencing hearing thus corrected any alleged error.").

[64] 189 A.3d 184, 2018 WL 2437229, at *3 (Del. May 30, 2018) (TABLE).  ("[W]hile the maximum sentence on Short's plea form stated twenty-five years when the actual maximum was a life sentence, the State's withdrawal of its petition changed the maximum sentence to match the plea form, thus correcting any error.").

[65] *Hernandez-Martinez*, 2023 WL 8254350, at *4.

[66] *Id.* (quoting *Shorts*, 2018 WL 2437229, at *2).

[67] *Id.* (quoting *Shorts*, 2018 WL 2437229, at *2).

Rule 61 and not the more lenient standard under Rule 32. We noted that "[f]inality concerns are heightened when a defendant seeks to withdraw a plea after sentencing."[68] Finally, we noted that unlike *Smith*, there were multiple mistakes in Hernandez-Martinez's plea hearing.

We also distinguished *Downer v. State* in *Hernandez-Martinez*. We observed that Downer moved to withdraw his guilty plea fifteen months after sentencing making him subject to Rule 61, Downer benefitted from his guilty plea by avoiding a more serious charge, and the case involved the prosecution of a sexual crime against a child.[69] By contrast, Hernandez-Martinez "moved to withdraw his plea pre-sentencing, pled guilty to the two lead charges in the indictment, and his withdrawn plea [did] not subject the State to the prejudice inherent in trying a case in which a child victim is an essential witness."[70]

### B. Miller Has Not Demonstrated Plain Error and His Guilty Plea Convictions Should Be Affirmed

We adhere to our view that meticulous care must be exercised in the taking of a guilty plea.[71] Yet, on occasion, guilty pleas to defective or nonexistent offenses have been upheld where the defendant receives a substantial benefit and where the defendant has not asserted that he would not have pled guilty but for the error. Miller has received a substantial benefit here by receiving immediate sentencing and avoiding the far greater potential prison term were he to proceed to trial. Additionally, Miller's sentence was not

---

[68] *Id*.

[69] *Id.* at *5.

[70] *Id.*

[71] *State v. Castro*, 375 A.2d 444, 449 (1977).

19

illegal.[72] For his drug dealing conviction, the trial court sentenced Miller to two years on the Class C felony, with no probation to follow, which is toward the lower end of the permissible zero-to-fifteen-year range.

We have previously observed that "'a voluntary guilty plea waives a defendant's right to challenge any errors or defects before the plea, even those of constitutional dimension.'"[73] This was part of our rationale for affirming the denial of relief in *Downer* where the defendant had pled to a nonexistent offense.[74] In *Downer*, this Court held that the defendant "through a voluntary and intelligent plea bargain, has forfeited his right to attack the underlying infirmity in the charge to which he pleaded guilty."[75] We observed that "[o]ther courts have similarly ruled that guilty pleas to defective or nonexistent offenses will be upheld where the defendant has entered the plea under a plea bargain agreement from which he received a *substantial benefit*, even though a jury conviction on the same charge might be reversed."[76]

Here, Miller received a substantial benefit. Perhaps the most certain benefit Miller received was immediate sentencing. The plea hearing began as a plea rejection colloquy,

---

[72] This Court has stated that a sentence is illegal "when the sentence imposed exceeds statutorily authorized limits or violates double jeopardy principles." *Henderson v. State*, 803 A.2d 428, 2002 WL 1751673, at *1 (Del. July 24, 2002) (TABLE).

[73] *Hernandez-Martinez v. State*, 308 A.3d 1192, 2023 WL 8254350, at *4 (Del. Nov. 29, 2023) (TABLE) (quoting *Smith v. State*, 841 A.2d 308, 2004 WL 120530, at *1 (Del. Jan. 15, 2004) (TABLE)).

[74] *Id.* at *5 (citing *Downer v. State*, 543 A.2d 309, 309–10 (Del. 1988), as holding that "pleading guilty waived defects in the indictment.").

[75] *Downer v. State*, 543 A.2d 309, 312 (Del. 1988).

[76] *Id.* at 313 (emphasis added).

20

but the following exchange subsequent to the court's discussion of the plea offer implies that the prospect of immediate sentencing weighed heavily in Miller's decision to accept the plea offer:

> THE COURT:  Having taken all of that into consideration, is it your wish -- your individual decision to reject the plea offer and move forward with trial?
>
> [THE DEFENDANT]:  If I took the plea today, would it be immediate sentencing?
>
> THE COURT:  Well, the plea, as it is, as is put here, says immediate sentencing.  That's what the Parties have agreed to as I read the plea offer now.
>
> [THE DEFENDANT]:  I will take the plea then.  I am going to accept the plea.[77]

In addition to immediate sentencing, Miller avoided the potential for a far longer prison sentence than the seven years recommended by the State under the plea deal.  During the plea hearing, the State stated that, without a habitual offender petition, Miller faced a 19-year mandatory minimum with a 108-year maximum if convicted of all charges.[78] However, if the State filed a habitual offender petition, Miller's potential sentence would increase to a 48-year mandatory minimum with a maximum of three life sentences.[79]  In addition to agreeing not to seek a habitual offender declaration, the State recommended the minimum mandatory for the PFDCF charge (where he faced a maximum of over twenty years at Level V) and it dismissed several charges.

---

[77] App. to Opening Br. at A60 (Guilty Plea and Sentencing Transcript 8:2–13).

[78] *Id.* at A55 (Guilty Plea and Sentencing Transcript 3:14–18).

[79] *Id.* (Guilty Plea and Sentencing Transcript 3:19–22).

The prospect of immediate sentencing plus avoiding the risk of up to three life sentences conferred a substantial benefit on Miller at least on par with that of the defendant in *Downer* where the substantial benefit from the plea contributed to our decision to affirm the denial of relief. Further, the State's decision to not pursue a habitual offender enhancement is a factor that this Court has considered in the past when denying a defendant relief from a guilty plea and Miller avoided such an enhancement here via his guilty plea.[80]

Miller attempts to distinguish the present case from *Downer* by arguing that "[u]nlike Downer, Mr. Miller, by pleading to an unindicted charge, pled to a more serious charge with a higher minimum mandatory sentence."[81] Miller ignores that he received the substantial benefits of immediate sentencing and avoiding the far higher sentencing risks of going to trial. The value of this benefit is underscored by this Court's recognition that "the maximum possible sentence is the most important consequence of a guilty plea."[82]

Finally, although he was misinformed about the sentence range, Miller has never argued that he would have proceeded to trial but for the error.[83] In fact, in a brief he filed

---

[80] *Hernandez-Martinez*, 2023 WL 8254350, at \*4 (citing *Shorts v. State*, 189 A.3d 184, 2018 WL 2437229, at \*3 (Del. May 30, 2018) (TABLE)).

[81] Reply Br. at 6.

[82] *Shorts*, 2018 WL 2437229, at \*2 (quoting *Allen v. State*, 509 A.2d 87, 88–89 (Del. 1986)).

[83] Other courts have found that a defendant's failure to assert that he would not have pleaded guilty absent the error is fatal to a showing of plain error. *See, e.g., United States v. Kennedy*, 493 Fed.Appx. 615 (6th Cir. 2012) (holding that defendant pled guilty after being misinformed about the maximum sentence, but because he did not claim he would have proceeded to trial but for the error, there was no plain error and thus his challenge to his plea was rejected); *United States v. Guerra*, 398 Fed.Appx. 14 (5th Cir. 2010) (error by court in describing mandatory minimum sentence was not plain error where defendant failed to allege that he would not have pleaded guilty but for the error); *United States v. Toruno*, 229 Fed.Appx. 296 (5th Cir. 2007) (court's error in stating that the maximum term of imprisonment was five years when, in fact, it was ten, was not plain error where defendant had "unequivocally admitted the facts stated by the Government in

in this Court he specifically emphasized that he did not seek to withdraw his plea. The record shows that Miller unequivocally admitted the facts presented by the State in support of the charges, namely, that he knowingly possessed with the intent to deliver 10 grams or more of methamphetamine. Based upon the record before us, we conclude that the error of which he complains did not affect his substantial rights and, therefore, is not plain error.

## V. CONCLUSION

For the reasons discussed above, we find no plain error. However, as noted above, Miller's Rule 35(b) motion was stayed by the Superior Court pending this appeal. Given that the errors in the Superior Court's sentencing increased both the minimum sentence for the drug dealing charge (as there was no minimum mandatory sentence for that charge) as well as the maximum sentence, the Superior Court may consider on remand whether to modify Miller's sentence. Accordingly, the matter is remanded to the Superior Court for resolution of pending Rule 35(b) motion. Jurisdiction is not retained.

---

support of the charges," and where he did not allege "that he would not have pleaded guilty had the district court and the plea agreement stated the correct maximum term."); *United States v. Heltzel*, 85 Fed.Appx. 96 (10th Cir. 2003) (court failed to inform defendant of the mandatory minimum and misstated the maximum possible penalty, but court was convinced by the record as a whole that she would have pled guilty even if the correct penalty range had been recited and thus, because the error "did not affect her substantial rights, it is not plain."); *United States v. Speights*, 59 Fed.Appx. 580 (4th Cir. 2003) (court's failure to accurately advise defendant of the maximum possible error was harmless where defendant did not assert on appeal that he would not have pled guilty had he been aware of the correct maximum sentence.).